AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☒ COMPLAINT    ☐ INFORMATION    ☐ INDICTMENT
                                      ☐ SUPERSEDING

**OFFENSE CHARGED**

21 U.S.C. §§ 841(a)(1) and (b)(1)(B)

☐ Petty
☐ Minor
☐ Misde-meanor
☒ Felony

PENALTY:
- Imprisonment:         Min. 5 – Max. 40 years
- Fine:                 $5 million
- Supervised release term:  Min. 4 years – Max. life
- Special assessment:   $100
- Forfeiture
- Deportation
- Denial of Federal Benefits

---

Name of District Court, and/or Judge/Magistrate Location

NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

**DEFENDANT - U.S**

▶ CARSON FRIES

DISTRICT COURT NUMBER

4:25-mj-71143-MAG

**FILED**

Sep 22 2025

Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

---

**PROCEEDING**

Name of Complaintant Agency, or Person (& Title, if any)

DEA TFO Davin Roberts

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
    ☐ U.S. ATTORNEY    ☐ DEFENSE

SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

MAGISTRATE CASE NO.

Name and Office of Person Furnishing Information on this form   Craig H. Missakian

☒ U.S. Attorney    ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)   Ivana Djak

---

**DEFENDANT**

**IS *NOT* IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☐ If not detained give date any prior summons was served on above charges ▶

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**
4) ☐ On this charge

5) ☐ On another conviction         ☐ Federal  ☒ State

6) ☐ Awaiting trial on other charges
    If answer to (6) is "Yes", show name of institution

Has detainer been filed?  ☐ Yes    ☐ No
If "Yes" give date filed

**DATE OF ARREST** ▶   Month/Day/Year

Or... if Arresting Agency & Warrant were not

**DATE TRANSFERRED TO U.S. CUSTODY** ▶   Month/Day/Year

☐ This report amends AO 257 previously submitted

---

**ADDITIONAL INFORMATION OR COMMENTS**

PROCESS:
☐ SUMMONS    ☐ NO PROCESS*    ☒ WARRANT    Bail Amount: $0

If Summons, complete following:
☐ Arraignment    ☐ Initial Appearance
Defendant Address:

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time:    Before Judge:

Comments:

AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### Northern District of California

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| CARSON FRIES. | ) Case No.    4:25-mj-71143-MAG |
| | ) |
| | ) |
| | ) |
| | ) |
| *Defendant(s)* | |

**FILED**

Sep 22 2025

Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____September 3, 2025_____ in the county of _____Contra Costa_____ in the

_____Northern_____ District of _____California_____ , the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 21 USC § 841(a)(1), (b)(1)(B) | Distribution of 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine |

This criminal complaint is based on these facts:

See attached Affidavit of Task Force Officer Davin Roberts, Drug Enforcement Administration

☑ Continued on the attached sheet.

Approved as to form /s/ Ivana Djak
AUSA IVANA DJAK

/s/ Davin Roberts
*Complainant's signature*

Davin Roberts, Task Force Officer, DEA
*Printed name and title*

Sworn to before me by telephone.

Date:    09/22/2025

*Judge's signature*

City and state:    McKinleyville, CA

Hon. Robert M. Illman, U.S. Magistrate Judge
*Printed name and title*

### AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR AN
### ARREST WARRANT AND CRIMINAL COMPLAINT

I, Davin Roberts, a Task Force Officer with the Drug Enforcement Administration (DEA), having been duly sworn, hereby depose and state as follows:

### INTRODUCTION

1. I make this affidavit in support of an application for an arrest warrant and criminal complaint charging CARSON FRIES A/K/A CJ (hereinafter, "FRIES") with 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(viii), based on his distribution of 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, occurring on or about September 3, 2025, in Bay Point, California, in the Northern District of California.

### SOURCES OF INFORMATION

2. The facts in this affidavit come from my personal observations, my training and experience, information from records and databases, and information obtained from other agents, officers, and witnesses. Where statements made by other individuals (including other law enforcement officers or agents) are referenced in this Affidavit, such statements are described in sum and substance and in relevant part. Similarly, where information contained in reports and other documents or records is referenced in this Affidavit, such information is also described in sum and substance and in relevant part.

3. Because this Affidavit is submitted for the limited purpose of establishing probable cause for a criminal complaint and arrest warrant, I have not included each and every fact known to me about this case. Rather, I have set forth only the facts that I believe are necessary to support probable cause for a criminal complaint and arrest warrant. My understanding of the facts and circumstances of the case may evolve as the investigation continues.

### AFFIANT BACKGROUND

4. I am a Police Officer with the Concord (CA) Police Department and have been so

1

employed since September 2013.  In March 2025, I was cross designated as a Task Force Officer (TFO) with the U.S. Department of Justice, Drug Enforcement Administration (DEA).  In this capacity, I am currently assigned to the DEA's San Francisco Field Division, Oakland Resident Office, Task Force Group.

5.      Since being sworn as a DEA TFO, I have received training and/or instruction in basic narcotic investigations, drug identification and detection, drug interdiction, familiarization with United States narcotics laws, financial investigations and money laundering, identification and seizure of drug related assets, organized crime investigations, physical and electronic surveillance, informant development and management, Title III investigations, and undercover operations.

6.      During my law enforcement career, I have been involved in investigations of numerous federal and state criminal offenses.  I have participated in and organized numerous investigations of illicit drug trafficking organizations, ranging from street level dealers to major dealers.  These investigations have included the use of confidential sources (CSs), undercover agents, and Sources of Information (collectively, "Sources"); toll records; physical surveillances; and the execution of search warrants.  These investigations have also included the unlawful importation, possession with intent to distribute, and distribution of controlled substances, the related laundering of monetary instruments, the conducting of monetary transactions involving the proceeds of specified unlawful activities, and conspiracies associated with criminal narcotics offenses, etc.  These investigations have resulted in numerous state and/or federal prosecutions of individuals who have possessed, imported, or distributed controlled substances, as well as the seizure of those illegal drugs and the proceeds from the sale of those illicit drugs.

7.      I have participated in surveillance of narcotics traffickers. During these surveillances, I have personally observed narcotics transactions, counter-surveillance techniques, and the methods that narcotics traffickers use to conduct clandestine meetings.

8.      I have participated in Organized Crime Drug Enforcement Task Force

2

("OCDETF") investigations. The OCDETF program is part of the United States Attorney General's strategy to reduce the availability of drugs by disrupting major trafficking organizations through joint collaborations across agencies.

9.    I have been involved in the execution of numerous state and/or federal narcotics-related search warrants. As a result, I have encountered and become familiar with the various tools, methods, trends, paraphernalia, and related articles used by drug traffickers and trafficking organizations in their efforts to import, conceal, manufacture, and distribute controlled substances. I am familiar with the appearance of methamphetamine, heroin, cocaine, fentanyl, marijuana, MDMA, counterfeit oxycodone (M30 pills) and other controlled substances. I am familiar with and aware of terminology used by narcotics traffickers concerning narcotics and narcotics dealing.

10.    I have interviewed numerous drug dealers, users, and confidential sources and have discussed with them the lifestyle, appearances, and habits of drug dealers and users, the use and meaning of coded language, and the concealment of assets. I have become familiar with the way narcotics traffickers smuggle, transport, store, and distribute narcotics, as well as how they collect and launder drug proceeds. I am also familiar with the way narcotics traffickers use telephones, cellular telephone technology, coded or slang-filled telephone conversations, false or fictitious identities, and other means to facilitate their illegal activities and thwart law enforcement investigations.

11.    Prior to being a TFO, I was a detective in the Violence Suppression Unit for approximately four years. I attended the Narcotics Investigations Course through the Institute of Criminal Investigations. The course was 80 hours of specialized training in narcotics investigations pertaining to: Search and seizure pertaining to major drug investigations, search warrant preparation, surveillance techniques, case reporting, informant management, major drug trafficking organizations, and courtroom testimony. I also attended the California Narcotics Officer's Association conference in 2018, 2019, 2021, 2022, and 2023. The conference is 40

hours of training workshops, which covers the newest drug trends of drug traffickers, various narcotics investigations tactics, and the hazards of narcotics investigations.

12. Prior to being a detective in the Violence Suppression Unit, I served on the Special Enforcement Team (SET). SET's primary duties include street-level narcotics investigations, assisting detectives with ongoing investigations, prostitution enforcement, and gang crimes. I also worked uniform patrol and am a current member of the SWAT team.

13. I attended the Contra Costa County Sheriff's Office P.O.S.T. Accredited Police Academy in Pittsburg, California. The P.O.S.T. Academy includes 1,020 hours of training, with roughly 40 hours devoted to identifying controlled substances and understanding the laws pertaining to controlled substances.

14. During my career, I have conducted preliminary and follow-up investigations into a variety of crimes. The investigations involved preparing police reports, collections of evidence, arresting suspects, interviewing victims and witnesses, interrogating suspects, and testifying in court proceedings. The crimes investigated include being under the influence of controlled substance, possession of controlled substances, and possession and transportation of controlled substances with intent to distribute.

15. I have written and assisted with the execution of search warrants that have resulted in the finding and collecting of the desired evidence sought in the warrants related to illegal narcotics possession and possession of controlled substances for sales.

16. I have testified as an expert in the identification of methamphetamine, heroin, fentanyl, cocaine, counterfeit fentanyl laced oxycodone (M30) pills as well as the sales of methamphetamine, heroin, fentanyl, and counterfeit fentanyl laced oxycodone (M30) pills in Contra Costa County Superior Court, CA.

17. As a DEA Task Force Officer, I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses

4

enumerated in Title 21.

18.     The facts set forth in this Affidavit are based on my personal knowledge, obtained through participation in this investigation, or information related to me by other law enforcement personnel involved in this investigation, and my training and experience.  Unless specifically indicated otherwise, all conversation and statements described in this Affidavit are related in substance and in part, not verbatim.

19.     Except where otherwise noted, the information set forth in this Affidavit has been obtained by me or provided to me, directly or indirectly, by federal law enforcement agents or other law enforcement officers who have either direct or indirect knowledge concerning the information. Information set forth herein resulting from physical surveillance is based on either my personal observations or information provided to me directly or indirectly through other law enforcement officers who also conducted such surveillance.  Furthermore, wherever information is attributed to law enforcement officers or to a law enforcement agency as a whole, I learned the information from speaking with other law enforcement officers and employees and/or by reviewing reports, notes, and other records prepared by them.

20.     This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## APPLICABLE STATUTE

21.     Distribution of Controlled Substance.  Under Title 21, United States Code, Section 841(a)(1), it is unlawful for any person to knowingly distribute a federally controlled substance.  Under 21 C.F.R. § 1308.12, methamphetamine is a Schedule II controlled substances.

## STATEMENT OF PROBABLE CAUSE

22.     Between on or about August 29, 2025, and on or about September 9, 2025, FRIES sold a DEA Confidential Source (hereinafter "CS") suspected controlled substances three times in Bay Point, California, in the Northern District of California.  During each of the controlled purchases described herein, the CS had an audio and visual recording device.

5

23.     The CS was a drug trafficker and knows FRIES to be a crystal methamphetamine source of supply.  The CS has performed multiple multi-pound methamphetamine transactions with FRIES over the course of several years.

24.     Law enforcement conducted extensive surveillance of FRIES and learned that he lives in a house on Shore Road in Bay Point, CA ("FRIES Residence").  The CS has previously purchased drugs from FRIES and picked the drugs up at the FRIES Residence.

25.     On August 29, 2025, FRIES sold approximately 478.8 gross grams of methamphetamine to the CS for $1,100.  The drugs were confirmed to be methamphetamine by DEA laboratory testing.  On September 3, 2025, FRIES sold approximately 518.2 gross grams of methamphetamine to the CS for $1,100.  The drugs were confirmed to be methamphetamine by DEA laboratory testing.  On September 9, 2025, FRIES sold approximately 506.8 gross grams of methamphetamine to the CS for $1,100.  The drugs were confirmed to be methamphetamine by DEA laboratory testing.

### August 29, 2025 CS Purchase

26.     On August 29, 2025, at approximately 5:25 p.m., the CS called FRIES and asked to come by FRIES's house.  FRIES initially requested the CS come by when it is dark.  FRIES changed his mind and requested the CS text him, when home, to make sure everything is ok. The CS agreed, and FRIES told the CS to pick "it" up behind the gate.  Based on my training, experience, and conversations with the CS, I know FRIES reference to "it" refers to one pound, or 16 ounces, of crystal methamphetamine.  After, agreeing to FRIES' terms, the call ended.

27.     The CS did not ask FRIES for a specific amount of crystal methamphetamine or a price, due to the CS typically purchasing 16 ounces, or one pound, for $1,100.  In several previous drug buys from FRIES, the CS would typically buy 16 ounces of methamphetamine for $1,100, approximately every few days.  In previous drug buys, if the CS needed more than the typical pound of methamphetamine, the CS would say so to FRIES expressly.  Otherwise, when the CS called FRIES, FRIES sold one pound or 16 ounces of methamphetamine.

6

28.    At approximately 5:41 p.m., the CS parked in front of the FRIES Residence and parked facing west toward Sand View Drive.  The CS exited the Confidential Source Vehicle (hereinafter "the CSV") and walked up the driveway of the FRIES Residence.  The CS walked around the east side of the FRIES Residence to a side gate, where the CS opened the gate and retrieved a black plastic bag from the other side.  That is what the CS understood FRIES to mean when he stated that he would leave it by the "gate."  The CS placed $1,100 U.S. currency (the CS buy was made with DEA Official Advanced Funds) next to the east wall of the FRIES Residence and placed a stone on top.  In previous drug buys with FRIES, the CS would typically place the money in the same spot next to the wall.  That is previously where FRIES instructed the CS to place money.  The CS walked back to the CSV with the black plastic bag and drove away from the location.

29.    After the controlled buy was conducted, the CS brought the drugs back to a neutral location, where DEA Special Agents (SAs) and investigators took custody of the drugs.  A DEA SA brought the drugs back to the DEA offices and weighed and booked the drugs into evidence for further testing.  The suspected crystal methamphetamine weighed 478.8 gross grams when weighed at the office.  The suspected drugs were submitted for further testing, and the laboratory tests confirmed that the substance was indeed methamphetamine.

### September 3, 2025 CS Purchase

30.    On September 3, 2025, at approximately 5:25 p.m., the CS, placed a phone call to FRIES at his number, 925-220-4156.  FRIES and the CS greeted each other, and the CS asked to come by the FRIES Residence to pick up "one."  Stating "one" for weight of drugs is how the CS had in the past indicated the amount of drugs he wanted to purchased from FRIES.  Based on my training and experience, I know high level drug dealers will use basic numbers to indicate how many pounds of drugs they want to purchase.  FRIES agreed to "just one" and said he would put it out behind the gate for the CS to pick up.  Again, the CS explained to law enforcement that "one" or "just one" meant the typical 16 ounces, or one pound, that the CS would buy from

7

FRIES in the past on a regular basis.  The statements "one" or "just one" resulted in the same amount of methamphetamine being left by the gate for the CS during each buy in this investigation.

31.     At approximately 5:39 p.m., the CS parked in front of the FRIES Residence and parked facing west toward Sand View Drive.  The CS exited the CSV and walked up the driveway of the FRIES Residence.  The CS walked around the east side of the FRIES Residence to a side gate, where the CS opened the gate and retrieved a black plastic bag from the other side. The CS placed $1,100 U.S. currency (CS buy was made with DEA Official Advanced Funds) next to the east wall of the residence and placed a brick on top.  The CS walked back to the CSV with the black plastic bag and drove away from the location.

32.     After the controlled buy was conducted, the CS brought the drugs back to a neutral location, where DEA SAs and investigators took custody of the drugs.  A DEA SA brought the drugs back to the DEA offices and weighed and booked the drugs into evidence for further testing.  The suspected crystal methamphetamine weighed 518.2 gross grams when weighed at the office.  The suspected drugs were submitted for further testing, and the laboratory tests confirmed that the substance was methamphetamine.

### September 9, 2025 CS Purchase

11.     On September 9, 2025, at approximately 5:25 p.m., the CS, placed a phone call to FRIES at his number, 925-220-4156.  FRIES and the CS greeted each other, and the CS asked to come by the FRIES Residence.  FRIES asked the CS what they wanted.  The CS said "one", and FRIES replied, he would put it out behind the gate.  After FRIES agreed to the "one", the call ended shortly after.

33.     At approximately 6:25 p.m., the CS parked in front of the FRIES Residence and parked facing west toward Sand View Drive.  The CS exited the CSV and walked up the driveway of the FRIES Residence.  The CS walked around the east side of the FRIES Residence

8

to a side gate, where the CS opened the gate and retrieved a black plastic bag from the other side. The CS placed $1,100 U.S. currency (CS buy was made with DEA Official Advanced Funds) inside the gate and on the left side and then placed a stone on top.  The CS walked back to the CSV with the black plastic bag and drove away from the location.

34.    After the controlled buy was conducted, the CS brought the drugs back to a neutral location, where DEA SAs and investigators took custody of the drugs.  A DEA SA brought the drugs back to the DEA offices and weighed and booked the drugs into evidence for further testing. The suspected crystal methamphetamine weighed 506.8 gross grams when weighed at the office.  The suspected drugs were submitted for further testing, and the laboratory tests confirmed that the substance was indeed methamphetamine.

## CONCLUSION

35.    Based on the information above, there is probable cause to believe that on or about September 3, 2025, FRIES knowingly and intentionally distributed 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B).  Accordingly, I respectfully request that the Court issue a criminal complaint and a warrant for his arrest.

*/s/ Davin Roberts*

_____

Davin Roberts
Task Force Officer
Drug Enforcement Administration

Sworn to before me over the telephone and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d) on this 22nd day of September 2025.

_____

HON. ROBERT M. ILLMAN
United States Magistrate Judge

9